**JONES TRUCK LINES, INC., Debtor-in-Possession, Plaintiff,**

v.

**COMMUNICATIONS SUPPLY SERVICE ASSOCIATION, Defendant.**

No. LR–C–93–458.

United States District Court,
E.D. Arkansas, W.D.

Sept. 13, 1993.

Charles T. Coleman, Wright, Lindsey & Jennings, Little Rock, AR.

Henry C. Kinslow, El Dorado, AR.

### MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

Plaintiff, Jones Truck Lines ("Jones"), filed for bankruptcy in July 1991. It instituted this action pursuant to the Interstate Commerce Act ("ICA"), 49 U.S.C. § 10101 *et seq.*, against the defendant, Communications Supply Service Association ("CSSA"), to recover undercharges for freight shipments made apparently during 1988 and 1989. This matter is before the Court on defendant's motions to stay the proceedings and to refer this action to the Interstate Commerce Commission ("ICC").

### I.

Jones operated as both a motor common carrier and a motor contract carrier. The parties entered into an agreement effective April 4, 1987 for the transportation of CSSA's freight. The defendant paid the price agreed upon by the parties at the time of the shipping. The prices were below the rates contained in the tariff that the ICA requires the carrier to publish and file with the ICC. 49 U.S.C. § 10762. An audit of all of the shipments handled by Jones for CSSA showed that CSSA owed an additional total amount of $7,780.99, the difference between Jones' filed tariff rate for common carriage and the negotiated rate actually billed and paid. Jones commenced this action contending it acted as a motor common carrier when it transported the freight tendered by CSSA

and is therefore entitled to the filed tariff rate under the filed rate doctrine.

Defendant asserts plaintiff transported the goods as a motor contract carrier pursuant to a valid written contract carrier agreement, that CSSA paid the amounts due pursuant to the contract, and that plaintiff is not entitled to collect the filed tariff rate. Defendant further asserts that even if plaintiff was acting as a common carrier, the tariff rates and practices are unreasonable and hence unenforceable. Defendant contends that the defenses of common versus contract carriage and rate reasonableness are issues within the primary jurisdiction of the ICC and that the Court should stay this action and let the ICC resolve these issues.

Plaintiff responds to the defendant's motion to stay by contending that the contract between it and CSSA fails to meet the statutory and regulatory requirements of contract carriage and, thus, the parties are bound by the filed tariff rate. Plaintiff contends the Court need not refer this issue to the ICC. Jones also contends that defendant's allegation of unreasonable practices does not constitute a defense and that defendant failed to proffer adequate evidence of rate unreasonableness to refer the issue to the ICC.

### II.

The ICA requires a carrier to publish and file tariffs containing the rates for transportation services it may provide in interstate commerce. 49 U.S.C. § 10762. The filed rate doctrine, as codified in § 10761(a), provides that a carrier "may not charge or receive a different compensation for that transportation . . . than the rates specified in the tariff." A shipper's ignorance or a carrier's misquotation of the applicable rate is not permitted to serve as a defense to a common carrier's collection of the filed rate. *Maislin Industries, U.S. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). In *Maislin*, the Supreme Court overturned the ICC's policy of relieving the shipper of the obligation to pay the filed rate when the shipper and the common carrier had negotiated a lower rate. *Id.* at 119, 110 S.Ct. at 2762.

In 1983, the ICC exempted contract carriers from the filed rate doctrine. *Exemption of Motor Contract Carriers from Tariff Filing Requirements*, 133 M.C.C. 150 (1983), *aff'd sub nom. Central & S. Motor Freight Tariff Ass'n v. United States*, 757 F.2d 301 (D.C.Cir.), *cert. denied*, 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). The Act defines "motor contract carrier" as "a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or (ii) designed to meet the distinct needs of each such person." 49 U.S.C. § 10102(15)(B). A motor contract carrier must satisfy two requirements to be considered a contract carrier: the agreements must meet the "distinct needs" of the shipper and the agreements must be "continuing." *Dan Barclay, Inc. v. Stewart & Stevenson Services*, 761 F.Supp. 194, 200 (D.Mass.1991). To fulfill the "distinct needs" requirement, a party must show a need "for a different or a more select or a more specialized service" than a common carrier can provide." *ICC v. J–T Transportation Co.*, 368 U.S. 81, 91, 82 S.Ct. 204, 210, 7 L.Ed.2d 147 (1961). In respect to the "continuing agreements" requirement, the ICC enacted a regulation defining continuing agreements as follows:

> No contract carrier by motor vehicle as defined in 49 U.S.C. 10012(15) shall transport property for hire ... except under special and individual contracts or agreements which shall be in writing, shall provide for transportation for a particular shipper or shippers, shall be bilateral and impose specific obligations upon both carrier and shipper or shippers, shall cover a series of shipments during a stated period of time in contrast to contracts of carriage governing individual shipments ...

49 C.F.R. § 1053.1 (1991).

### III.

The Supreme Court has explained the doctrine of primary jurisdiction as follows:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the court and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. More recently, the expert and specialized knowledge of the agencies involved has been particularly stressed ...

*United States v. Western Pacific R.R.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–165, 1 L.Ed.2d 126 (1956).

Additionally, application of the doctrine is appropriate when policy considerations are at issue. *Atlantis Express, Inc. v. Standard Transportation Services, Inc.*, 955 F.2d 529, 532–33 (8th Cir.1992) (citation omitted).

### IV.

The threshold issue here is whether plaintiff was operating as a common carrier or a contract carrier when it transported the goods tendered by the defendant. Resolution of this issue depends upon an interpretation of the provisions of the statute, regulations, and case law. The ICC has repeatedly

stated that it has primary jurisdiction to determine whether transportation subject to its regulation is contract carriage or common carriage. *Nonoperating Motor Carriers— Collection of Undercharges,* Ex Parte No. MC–208, 8 I.C.C.2d 742, 752 (1992); *Contracts for Transportation of Property,* Ex Parte No. MC–198, 8 I.C.C.2d 520, 529 (1992); *General Mills, Inc.,* 8 I.C.C.2d 313, 320 (1992). Courts have also referred the contract versus common carrier issue to the ICC pursuant to the doctrine of primary jurisdiction. *See, e.g. Atlantis Express,* 955 F.2d at 533–34.

The ICC recently repealed 49 C.F.R. § 1053. *Contracts for Transportation of Property,* Ex Parte No. MC–198, 8 I.C.C.2d 520 (1992). This change has caused considerable confusion as to what standards apply in determining contract carriages. The Commission held that "it is the totality of the circumstances surrounding any particular movement, not the presence or absence of a written contract, that determines whether the transportation is contract carriage." *Id.* at 529.

The Court finds that reference of the contract carriage issue to the ICC is appropriate under the doctrine of primary jurisdiction. Congress defined contract and common carriage but left it to the ICC to interpret and apply those statutory definitions in individual cases. The ICC is better equipped to determine whether the new standards it set forth in *Contracts for Transportation of Property,* Ex Parte No. MC–198, 8 I.C.C. 520 (1992) will apply to the present dispute and, if so, how to interpret them. Referral to the ICC will serve two purposes of the doctrine of primary jurisdiction—it will promote uniformity and will utilize the agency's expert and specialized knowledge.

Accordingly, the issue of whether Jones was transporting goods for CSSA in a contract carriage capacity will be referred to the ICC pursuant to the doctrine of primary jurisdiction.

1. If the ICC determines that the goods were transported by plaintiff pursuant to its contract

**V.**

■ Defendant argues that even if the ICC or Court finds that Jones acted as a common carrier, Jones may not enforce its filed tariff rates because they are unreasonable. Defendant argues that the issue of whether filed rates are reasonable is one within the primary jurisdiction of the ICC.

In *Atlantis Express,* 955 F.2d 529, the court held that where a carrier has been liquidated and a reparations action is therefore impossible, unreasonableness may be raised as a defense to an undercharge action. The court further stated that in order to justify referral, the parties must make a threshold showing of unreasonableness. " '[M]ere mention of rate unreasonableness, entirely unsupported even now, is not sufficient' to justify referral to the ICC." 955 F.2d at 537 (citation omitted). Relevant factors in determining whether the filed rates were unreasonable include "whether the filed rate would have moved the traffic, and how the carrier's rates compare with competitively set rates for the same traffic—especially those rates offered by healthy (non-bankrupt) carriers." *Id.* Here, there is no evidence much less sufficient evidence to warrant referral of the issue of rate unreasonableness. Because defendant has failed to make a showing that would justify referral of this issue to the ICC at this time, the motion for referral is denied in part.[1]

**VI.**

IT IS THEREFORE ORDERED that defendant's motion to stay proceedings and defendant's motion to refer are granted. The Clerk is directed to administratively terminate this case. Within thirty days of the determination by the ICC of the issue of whether the disputed shipments were transported pursuant to plaintiff's contract carrier authority, counsel for the parties are to file a motion to reinstate if any further proceedings are necessary herein. If no motion is filed, without further action from this Court,

carrier authority, the issue of rate unreasonableness will be moot.

this case will be dismissed with prejudice.[2]

2. Plaintiff's motion to strike defendant's affirma-
tive defenses [doc. # 12] is denied as moot at this
time.