In the Matter of BROWN TRANSPORT TRUCKLOAD, INC., Brown Transport Corp., Thurston Motor Lines, Inc., Debtors.

Frank W. SCROGGINS, As Successor Trustee on Behalf of the Bankruptcy Estate of Brown Transport Truckload, Inc., Brown Transport Corp., and Thurston Motor Lines, Inc., Plaintiff,

v.

THOMSON CONSUMER ELECTRONICS, INC., Defendant.

Bankruptcy Nos. A89–12515–WHD, A89–12517–WHD and A89–12521–WHD. Adv. No. 92–6171A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

June 24, 1994.

T. Gordon Lamb, Lamb & Associates, Atlanta, GA, for plaintiff/Trustee.

Mark Marani, Small, White & Marani, Atlanta, GA, Steven G. Cracraft, William N. Ivers, Stewart & Irwin, Indianapolis, IN, for defendant.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Before the Court are motions by Frank W. Scroggins ("Plaintiff"), as Successor Trustee for Brown Transport Truckload, Inc., et al. (collectively referred to as "Debtor") and by Thomson Consumer Electronics, Inc. ("Defendant"). Defendant has presented this Court with a Motion To Dismiss or, in the Alternative, for Summary Judgment. Conversely, Plaintiff has offered his own Motion to Set Aside the Interstate Commerce Commission's (ICC's) decision in *Thomson Consumer Electronics, Inc.—Petition for Declaratory Order—Certain Rates and Practices of Robert E. Brizendine, Trustee of Brown Transport Truckload, Inc., Brown Transport Corp., and Thurston Motor Lines, Inc.*, No. 40948 (decision served October 1, 1993). These matters constitute core proceedings

over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(E) and (O). This Court's Findings of Fact and Conclusions of Law are as follows:

## FINDINGS OF FACT

The Debtor, an interstate trucking company, filed a Chapter 11 petition with this Court on October 31, 1989. The Debtor then converted its case to a Chapter 7 liquidation on January 8, 1990, and the Plaintiff's predecessor, Robert E. Brizendine, was appointed as its Trustee. Prior to its original filing, Debtor had executed and performed two "Corporate Transportation Contracts" with the Defendant, and those agreements later became the focus of Trustee Brizendine's attention in Bankruptcy. Specifically, the Trustee filed a Complaint for Turnover of Property for Money Judgment ("Complaint") on February 7, 1992, seeking to recover alleged underpayments by the Defendant shipper in the performance of those agreements.

The Trustee and his successor, Mr. Scroggins, acknowledge that the Defendant paid the rate which it and the Debtor agreed upon well before bankruptcy. Nonetheless they argue that, pursuant to 49 U.S.C. §§ 10761(a) and 10762, the Defendant remains liable for the difference between that agreed rate and the "tariff" rate which the Debtor had on file with the ICC at the time. In this application of the "filed rate doctrine" the Plaintiff seeks to collect $634,049.72 in alleged undercharges from the Defendant. Additionally, Plaintiff requests pre-judgment interest on that amount from the date of the oldest bill, as permitted by 28 U.S.C. § 1961.

The Defendant has answered the Plaintiff's Complaint by denying the material allegations of fact and raising several affirmative defenses. First, Defendant asserts that the Debtor carried the involved shipments under its authority as a contract carrier and, therefore, that the filed rate doctrine does not apply. If the shipments are found to have passed under common carrier rather than contract carrier authority, the Defendant alternatively argues that the rates in question are unreasonable and not applicable to the shipments in question.

In an earlier stage of this proceeding, Defendant posited that its defenses called into question several issues within the primary jurisdiction of the Interstate Commerce Commission. Accordingly, Defendant submitted a Motion for Referral of those matters to the ICC. In an Order dated November 17, 1992 ("the Referral Order"), this Court granted Defendant's Motion to Refer [1] to the ICC the following issues: (1) whether these shipments passed under the Debtor's contract carrier authority or its common carrier authority; (2) whether the rates which the Plaintiff now attempts to apply to the Defendant are unreasonable *per se;* and (3) whether the tariff rates which the Plaintiff seeks are applicable to the shipments in question.

After hearing the parties' arguments on these issues, the ICC delivered its decision on September 21, 1993. *Thomson Consumer Electronics, Inc.—Petition for Declaratory Order—Certain Rates and Practices of Robert E. Brizendine, Trustee of Brown Transport Truckload, Inc., Brown Transport Corp., and Thurston Motor Lines, Inc.,* No. 40948. In that decision, the ICC concluded that the Debtor did indeed transport the Defendant's shipments under contract carrier authority. Having reached that decision, the ICC did not consider Defendant's alternative arguments of rate unreasonableness and nonapplicability.

The parties now have returned to this Court, where the Defendant has moved for Summary Judgment in light of the ICC's findings. Conversely, the Plaintiff has asked this Court to set aside the ICC decision. In essence, Plaintiff argues that the ICC decision violates the Supreme Court's rulings in *Maislin Indus. v. Primary Steel,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1989) and *Reiter v. Cooper,* —— U.S. ——, 113

---

1. This Court acknowledges the technical inaccuracy of the term "referral" in such a case. *See Reiter v. Cooper,* —— U.S. ——, —— n. 3, 113 S.Ct. 1213, 1220 n. 3, 122 L.Ed.2d 604 (1994) (noting that the "referring" court has no such authority and that in practice it merely stays or dismisses the proceeding before it while the parties file a petition with the ICC). Nonetheless, because "referral" remains the commonly used term for the involved procedure, this Court will employ it.

S.Ct. 1213, 122 L.Ed.2d 604 (1993), because it interprets other sections of the Interstate Commerce Act (ICA) in a manner which undermines the filed rate doctrine. Additionally, Plaintiff challenges the propriety of certain factors considered by the ICC in the course of the involved proceedings.

## Conclusions of Law

■ As previously noted, this suit involves an application of the filed rate doctrine. Forming the heart of the Interstate Commerce Act, the codified form of this doctrine provides:

> Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission . . . shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.

49 U.S.C. § 10761(a)(1) (1982 ed.). The ICA also provides carriers with a cause of action to recover deviations from the filed rate which occurred within the previous three years. 49 U.S.C. § 11706(a) (1982 ed.). Moreover, where the doctrine applies, courts will enforce it strictly, without regard for the degree of hardship befalling the shipper. *Maislin,* 497 U.S. at 128.

■ As the introductory phrase to § 10762(a)(1) suggests, however, there are exceptions to the filed rate doctrine's normally pervasive reign. For instance, as noted by the ICC, Ex Parte No. MC–165, *Exemption of Motor Contract Carriers from Tariff Filing Requirements,* 133 M.C.C. 150, *aff'd sub*

*nom., Central & S. Motor Freight Tariff Ass'n v. United States,* 757 F.2d 301 (D.C.Cir.1985), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985), the filed rate doctrine does not apply to shipments made under a carrier's contract authority. Thus, if the carrier in question acted under contract carrier authority, as a matter of law, plaintiffs cannot recover on their undercharge claim. *Covey v. ConAgra, Inc.,* 788 F.Supp. 1160, 1162 (D.Colo.1992). As a preliminary matter, the Court will review the applicable legal doctrines and the ICC's role in interpreting contract carriage. In light of the dispositiveness of this issue, the Court then will address the validity of the ICC's conclusion that here the Debtor acted under contract carrier authority.[2] Having done so, the Court then will turn to Defendant's Motion for Summary Judgment.

## I. "CONTRACT CARRIAGE" AND THE ICC'S ROLE AS INTERPRETER

■ The ICA defines a "motor common carrier" as "a person holding itself out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes, or both." 49 U.S.C. § 10102(14) (1982 ed.). Conversely, that Act defines a "motor contract carrier" as

> [a] person providing motor vehicle transportation of property for compensation under *continuing agreements* with one or more persons—
>
> (i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or
>
> (ii) designed to meet the *distinct needs* of each such person.

49 U.S.C. § 10102(15)(B) (emphasis added). As in most undercharge actions, here we have no evidence that the Debtor exclusively devoted a portion of its fleet to handle the Defendant's shipments. The language of subsection (i), therefore, bears little impact

---

2. This Court notes that rate reasonableness continues to form a valid counterclaim to a rate undercharge action. *See Reiter,* —— U.S. at ——, 113 S.Ct. at 1219. *See also* David S. Cohen, Note, *A Reasonable Approach to Rate Reasonableness,* 10 Bankr.Dev.J. 207, 216–29 (1993) (summarizing the approaches of various circuit courts with regard to this counterclaim). The ICC, however, did not address the Defendant's claim of rate unreasonableness. Consequently, this Court will limit its discussion to the Defendant's claim of contract carriage and the treatment which the ICC afforded it.

upon this case. Consequently, for the purpose at hand, § 10102(15)(B) generates two relevant requirements for contract carriage to have existed—the presence of a "continuing agreement" and the satisfaction of a shipper's "distinct needs". *Jones Truck Lines, Inc. v. Empire Level Mfg. Corp.*, No. 93–C–696, 1993 WL 527352, at *1, 1993 U.S.Dist. LEXIS 17928, at *7 (E.D.Wis. Oct. 18, 1993) (citations omitted). Previous ICC regulations have given specific technical criteria for the "continuing agreement" test. 49 C.F.R. § 1053.1 (repealed in 1992). However, the ICC recently has repealed those criteria in favor of a "totality of the circumstances" test. *See Contracts for Transp. of Property*, Ex Parte No. MC–198, 8 I.C.C.2d 520 (1992). Under that new standard, the ICC examines a variety of factors to determine the nature of the commitment between the parties and the corresponding type of carriage. *Zoneskip, Inc. v. UPS, Inc. and UPS of America, Inc.*, 8 I.C.C.2d 645, 653–55 (1992), *pet. for review denied sub nom., Zoneskip, Inc. v. United States*, 998 F.2d 1007 (3d Cir.1993) (mem.).

 "Distinct needs" are those which require a "more select or more specialized service" than a common carrier can provide. *ICC v. J–T Transp. Co.*, 368 U.S. 81, 91, 82 S.Ct. 204, 210, 7 L.Ed.2d 147 (1961). Services catering to distinct needs may differ "in quality, in priority, in control by the shipper, or in some other significant respect, from the service a common carrier holds out to the public at large," *Dan Barclay, Inc. v. Stewart & Stevenson Serv., Inc.*, 761 F.Supp. 194, 200 (D.Mass.1991) (citations omitted), but those "distinct needs" do not have to be expressly included within the contract. *Transrisk Corp. v. Goodyear Tire & Rubber*, 839 F.Supp. 1162, 1166 (D.Md.1992).

In application, the vagueness of the "distinct needs" and "continuing agreement" terminologies makes the finding of contract carriage a difficult matter of legal interpretation. *Jones Truck Lines v. Communications*

*Supply Serv. Ass'n*, 840 F.Supp. 82, 85 (E.D.Ark.1993). This challenge becomes all the more difficult when the carrier possesses both common and contract authorization from the ICC and could have carried the defendant's goods under either authority. *Transrisk*, 839 F.Supp. at 1165 (citing *Dan Barclay*, 761 F.Supp. at 200). In light of these considerations and the ICC's role as the administrator of the ICA, courts have established a trend of frequently referring questions of contract carriage to the ICC, as the body with primary jurisdiction.[3] Indeed, it is that trend which this Court followed in its Referral Order dated November 17, 1992.

## II. REVIEW OF THE ICC DECISION

Now, however, Plaintiff raises a separate issue—the degree to which the referring court must find itself bound by that consequent ICC decision. Specifically, Plaintiff argues that pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), this Court should set aside the ICC's decision as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

### A. Statutory Limits Upon Plaintiff's Challenge

 Plaintiff is correct in his assumption that a referring Court may review and set aside a resulting ICC decision. On that question, 28 U.S.C. § 1336(b) provides:

When a district court or the United States Court of Federal Claims refers a question or issue to the Interstate Commerce Commission for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, suspend, in whole or in part, any order of the Interstate Commerce Commission arising out of such referral.

·28 U.S.C. § 1336(b). As a "unit of the district court", *Grewe v. United States (In re Grewe)*, 4 F.3d 299, 304 (4th Cir.1993), a

---

3. *See Brizendine v. Baldwin Hardware Corp.*, No. 91–6800, 1992 WL 209980, at *2–4, 1992 U.S.Dist. LEXIS 13033, at *7–12 (E.D.Pa. August 25, 1992); *Transrisk Corp. v. Goodyear Tire & Rubber*, 839 F.Supp. 1162, 1167–69 (D.Md.1992). Although no fixed formula for primary jurisdic-

tion exists, referral is deemed appropriate when, as here, it would foster uniformity of decision and take advantage of special expertise. *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64–65, 77 S.Ct. 161, 165–66, 1 L.Ed.2d 126 (1956).

referring bankruptcy court falls within the proviso of § 1336(b). While agency interpretations normally receive deference, an agency's application of statutory language need not be followed when there are compelling indications of error. *CBS, Inc. v. FCC*, 453 U.S. 367, 382, 101 S.Ct. 2813, 2823, 69 L.Ed.2d 706 (1981). Thus, as a properly authorized court of review, this Court may set aside an ICC decision generated by its referral if that decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[4]

■ Plaintiff here, however, fails to recognize the limitations found in § 1336(c), which provides:

> Any action brought under subsection (b) of this section *shall be filed within 90 days* from the date that the order of the Interstate Commerce Commission becomes final.

28 U.S.C. § 1336(c) (emphasis added). Here, the ICC finalized its decision in a written order dated September 21, 1993. *See Thomson Consumer Electronics, Inc.—Petition for Declaratory Order—Certain Rates and Practices of Robert E. Brizendine, Trustee of Brown Transport Truckload, Inc., Brown Transport Corp., and Thurston Motor Lines, Inc.*, No. 40948. However, the Plaintiff did not question the validity of that decision until his Motion to Set Aside dated April 1, 1994. Because he did not promptly challenge the Commission's decision within 90 days of its finalization, Plaintiff is now precluded from attacking its validity.

---

**4.** At first glance, it might appear that the recently enacted Negotiated Rates Act, Pub.L. No. 103–180 (S. 412) ("the NRA"), grants the ICC authority to decide the existence of contract carriage with irrevocable finality. Section 8 of that Act provides:

> If a motor carrier ... has authority to provide transportation as both a motor common carrier and a motor contract carrier and a dispute arises as to whether certain transportation is provided in its common carrier or contract carrier capacity and the parties are not able to resolve the dispute consensually, the Commission shall have jurisdiction to, and shall, resolve the dispute.

### B. Substance of Plaintiff's Challenge

Even absent the time limitations, this Court believes that this ICC decision would survive review under 5 U.S.C. § 706(2). In essence, Plaintiff has raised two somewhat related challenges to the ICC decision: (1) that it violates the mandate of the Supreme Court's holdings in *Maislin Indus. v. Primary Steel*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1989) and *Reiter v. Cooper*, —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); and (2) that the ICC has arbitrarily and capriciously deviated from its longstanding criteria for contract carriage.

### (1) The Maislin and Reiter Holdings

In the first leg of his challenge to the ICC decision, Plaintiff suggests that the Supreme Court holdings of *Maislin* and *Reiter* weaken the contract carriage exception to the filed rate doctrine. In making this argument, however, the Trustee demonstrates a misunderstanding of the *Maislin* and *Reiter* cases. *Maislin*, for instance, dealt specifically with the activities of a *common carrier* who agreed to file a new rate covering a particular shipper's business but then neglected to make such a filing with the ICC. *Maislin*, 497 U.S. at 121–23, 110 S.Ct. at 2763–64. *Maislin*'s dilemma arose when the carrier later brought an undercharge action for the difference between the negotiated (but never filed) rate and the standard rate actually on file. *Id.* Although the ICC's doctrine of negotiated rates would have held the carrier to the agreed upon rate, the Supreme Court invalidated that doctrine, stating that the filed rate must control.

49 U.S.C. § 11101(d). However, as § 9 of the NRA points out, this grant of authority does not deprive the referring court of its jurisdiction over the case. Nonetheless, this Court does take note of the NRA's importance. In passing that Act, Congress made a concerted effort to combat what has become a rampant plague of undercharge actions by reaffirming the ICC's role as interpreter of "contract carriage." *See Jones Truck Lines, Inc. v. AFCO Steel, Inc.*, 849 F.Supp. 1296, 1298–1307 (E.D.Ark.1994) (providing detailed analysis of the NRA's legislative history with respect to the undercharge action dilemma).

Here, however, there was no such new filing contemplated by the parties. Defendant and the ICC have not suggested that the Debtor acted as a common carrier who neglected to file a new rate previously negotiated with the shipper. Instead they have posited that the Debtor acted under contract carrier authority. Unlike common carriers, contract carriers are not subject to the filed rate doctrine at all. *See Exemption of Motor Contract Carriers,* 133 M.C.C. at 150.

Plaintiff's suggestion that *Maislin*'s allegiance to the filed rate doctrine should govern contract carriers as well as common carriers offends the very language of the *Maislin* holding. In the course of writing that opinion for the majority, Justice Brennan took great effort to distinguish the case before the Court from that of a contract carrier by noting,

> Even before passage of the MCA, Congress had allowed the Commission to exempt motor *contract* carriers from the requirement that they adhere to the published tariff ... demonstrating that Congress is aware of the requirement and has deliberately chosen not to disturb it with respect to motor *common* carriers.

*Maislin,* 497 U.S. at 135, 110 S.Ct. at 2770–71 (emphasis in original). Similarly, in a concurring opinion, Justice Scalia analyzed the structure of 49 U.S.C. §§ 10761 and 10762, the ICA's codification of the filed rate doctrine, stating:

> [The subject of section 10761(a)'s "except as provided in this subtitle" clause] is obvious—such provisions as § 10762(a)(1), which states that certain motor contract carriers that serve only one shipper need file only minimum rates.... But it is the second sentence of § 10761(a) that contains the requirement that only filed rates can be charged. Of course the subject of the second sentence, *"[t]hat carrier"* ... *must reasonably be deemed to refer to a carrier covered by the first sentence—so that the obligation to charge the filed rate applies only to those carriers required to file "the rate for the transportation or service." (Thus, a motor contract carrier required to file only minimum rates un-*

der *§ 10762(a)(1) can charge rates higher than those minimums.)*

*Id.* at 136–37, 110 S.Ct. at 2771 (emphasis added). In light of these efforts by the *Maislin* Court to distinguish the negotiated rate doctrine from various exceptions traditionally afforded contract carriers, Plaintiff's citation of that authority provides no support for his current challenge to this ICC finding of contract carriage.

In that it served to limit the *Maislin* doctrine even further, the Supreme Court's opinion in *Reiter v. Cooper* cannot support Plaintiff's position either. On the scope of the filed rate doctrine, the *Reiter* Court commented:

> The filed rate doctrine embodies the principle that a shipper cannot avoid payment of the tariff rate by invoking common-law claims and defenses such as ignorance, estoppel, or prior agreement to a different rate. *It assuredly does not preclude avoidance of the tariff rate, however, through claims and defenses that are specifically accorded by the ICA itself.*

*Reiter,* —— U.S. at ——, 113 S.Ct. at 1219 (emphasis added) (citations omitted). Although the *Reiter* Court made these comments in the context of a Defendant's unreasonableness defense, they apply equally as well to the contract carriage exception. *See* 49 U.S.C. 10761(b) (in which the ICA specifically grants the ICC the power to exempt contract carriers from the filed rate doctrine). Thus, like the defense of rate unreasonableness, the contract carriage exception remains intact in the wake of the *Maislin* and *Reiter* holdings. This Court finds the Trustee's argument to the contrary wholly without merit.

*(2) The Standard and the Considerations Which guided the ICC's Finding of Contract Carriage*

As a second ground of attack, Plaintiff alleges that the factors considered here by the ICC were egregiously inappropriate. Conceivably, this type of challenge might take either of two distinct forms. First, the Trustee might present a challenge to the actual standard towards which the Commission steered its analysis. Specifically, Plaintiff could argue that, although § 1053.1[5] was

5. ICC regulatory § 1053.1 governed the criteria for contract carriage by providing:

No contract carrier by motor vehicle as defined in 49 U.S.C. § 10012(15) shall transport property for hire ... except under special and

repealed in 1992, it should still govern these shipments since they pre-dated the repeal. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988) (repeal of regulation may not operate retroactively unless so authorized by statute); *See also Hoarty v. C.H. Robinson Co. (In re Best Refrigerated Express)*, 168 B.R. 969 (Bankr.D.Neb.1994) (noting that, notwithstanding the ICC's repeal of § 1053.1, that section's regulations continue to govern shipments which pre-date the repeal). Since the agreements and transportations at issue pre-dated the § 1053.1 repeal, it would appear that the ICC would have to evaluate the existence of contract carriage in light of the regulatory requirements of § 1053.1. However, Plaintiff's challenge to the ICC decision does not appear to address the applicability of § 1053.1 to these carriages. Moreover, this Court finds that, in substance, the Commission's analysis satisfied the mandate of § 1053.1 by specifically noting the existence of a writing between two parties under which each particularly obligated themselves for a specific period of time. *See Thomson Consumer Electronics, Inc.*, No. 40948 at 4–11.

Rather than advancing the § 1053.1 formal argument, Plaintiff has advanced a separate challenge to the ICC's method of examination. In it, he focuses upon the ingredients to the Commission's decision, *i.e.*, the *per se* legality of certain factors which the ICC has included in the "totality of the circumstances" test. According to the Plaintiff, impermissible considerations, such as the parties' intent, were given attention by the ICC while allegedly mandatory factors, such as the parties' mutual obligations, were ignored.

■ Initially, this Court notes that "regulatory agencies do not establish rules of conduct to last forever; they are supposed, within the limits of the law and of fair and prudent administration, to adapt their rules and practices to the Nation's needs in a volatile, changing economy." *American*

*Trucking Ass'n, Inc. v. Atchison Topeka & Santa Fe Ry. Co.*, 387 U.S. 397, 416, 87 S.Ct. 1608, 1618, 18 L.Ed.2d 847 (1967). Regarding the ICC's recent trend of considering the parties' intent to trade under contract authority in addition to its other traditional factors of consideration, this Court finds the following analysis from *Hoarty v. C.H. Robinson* compelling:

The Trustee argues that the shift in the ICC's definition of contract carriers is a "complete evisceration" of the statute governing contract carriage at the ICC.... [and that] the shift from strict compliance to a focus on the intent of the parties is somehow invalid; however, the Trustee submits no evidence or case law that states that it is impermissible for an administrative agency to alter its interpretation of its various rules and regulations. As discussed above, Congress granted the ICC the authority to revise its interpretation of regulations to reflect the reality of the marketplace.

168 B.R. 969, at 975 (citations omitted). Moreover, this Court finds that, rather than contravening established legal standards as the Trustee suggests, consideration of the parties' intent should more closely align ICC interpretations with standard principles of contract law. As such, the ICC's consideration of intent hardly merits characterization as "not in accordance with law." 5 U.S.C. § 706(2)(A).

■ Plaintiff's other claim of arbitrariness rests itself in a suggestion that the ICC made no finding of mutual obligation. This, however, misstates the Commission's approach. As noted earlier, a proper inquiry simply demands substantial compliance with the requirements for a "continuing agreement" which services "distinct needs". Furthermore, that interpretive inquiry should delve into the actual conduct of the parties as well as the language of the contract. *Brizendine v. Reliable Corp.*, 152 B.R. 224, 226 (N.D.Ill.1993). Thus, a thorough search for bilateral obligation should focus upon both

individual contracts or agreements which shall be in writing, shall provide for transportation for a particular shipper or shippers, shall be bilateral and impose specific obligations upon

both carrier and shipper or shippers, shall cover a series of shipments during a stated period.

49 C.F.R. § 1053.1 (repealed 1992).

the language of the agreement and the extent to which each party demonstrated some performatory commitment.

In its decision here, the ICC specifically addressed the issue of bilateral obligation with the following detailed analysis:

> The agreements, moreover, were *bilateral* agreements in writing providing for transportation by a carrier, Brown, for a particular shipper, Thomson. Brown agreed to transport goods, under its contract carrier authority, for Thomson, between certain points and for prices upon which the parties had agreed and attached in appendices to the agreements. *Thomson in fact tendered many shipments to Brown and paid for the transportation in accordance with the agreed upon rates.* The trustee argues that the agreements were not bilateral, emphasizing the fact that they did not expressly require Thomson to tender shipments. However, the Commission has never required numerical specificity as to a minimum number of shipments a party is to tender under a contract. Moreover, *the trustee ignores the factual pattern of Thomson's tenders to Brown of substantial amounts of traffic and payment for the transportation, Brown's acquisition of certain of Thomson's routes, and their continuing contractual relationship as evidenced by their conduct....*

*Thomson,* No. 40948 at 8 (emphasis added) (citations omitted). In addition to having ignored the factual pattern of the parties' conduct, the Plaintiff now appears to ignore the extensive treatment which the ICC afforded this issue of bilateral obligation in its analysis. As the foregoing excerpt from its decision shows, the ICC carefully and rationally traced out the mutual obligations of the parties. Consequently, the Court finds nothing arbitrary or capricious in the Commission's treatment of this issue.

In sum, Plaintiff's challenge to the ICC's finding of contract carriage cannot surmount the time bar of 28 U.S.C. § 1336(c). Even absent that limitation, this Court believes that the decision would pass scrutiny under the "arbitrary and capricious" standards of 5 U.S.C. § 706(2). The Commission's decision does not contravene the holdings of *Maislin* and *Reiter.* Additionally, the ICC's consideration of the parties' intent comports with standard agency procedure as well as "public interest and the transportation policy." 49 U.S.C. § 10761(b). Contrary to Plaintiff's contention, in finding substantial compliance with the requirements for a continuing agreement which satisfied the Defendant's distinct needs, the Commission acted without caprice or arbitrariness. As such, this Court finds that the ICC's decision in *Thomson Consumer Electronics, Inc.—Petition for Declaratory Order—Certain Rates and Practices of Robert E. Brizendine, Trustee of Brown Transport Truckload, Inc., Brown Transport Corp., and Thurston Motor Lines, Inc.,* No. 40948, survives judicial review.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In accordance with Fed.R.Civ.P. 56 (applicable to bankruptcy under Fed.R.Bankr.P. 7056), the Court will grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non moving party." *Id.* Also, the moving party bears the burden of establishing its right to summary judgment, *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982), and the Court will read the opposing party's pleadings liberally. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

In determining whether there is a genuine issue of material fact, the Court must view the evidence in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). Once the movant has supported its motion with a *prima facie* showing that summary judgment is proper, the non-movant must go beyond the pleadings and demonstrate that there is a

material issue of fact which precludes summary judgment. *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Martin v. Commercial Union Ins. Co.,* 935 F.2d 235, 238 (11th Cir.1991).

In the case *sub judice,* this Court referred the question of contract carriage to the ICC, noting that if contract carriage existed, then as a matter of law, Plaintiff's undercharge action could not succeed. By pointing to the ICC's finding of such contract authority, Defendant has established *prima facie* evidence of entitlement to summary judgment. Plaintiff's only opposition to this Motion has taken the form of an attack on the validity of that ICC decision. As this opinion establishes, however, that challenge by the Plaintiff fails to survive both statutory time limits and substantive analysis. `Plaintiff's Motion to Set Aside the decision of the Interstate Commerce Commission in *Thomson Consumer Electronics, Inc.—Petition for Declaratory Order—Certain Rates and Practices of Robert E. Brizendine, Trustee of Brown Transport Truckload, Inc., Brown Transport Corp., and Thurston Motor Lines, Inc.,* No. 40948, therefore, is **DENIED.** At this point, no material issue of fact exists. Accordingly, the Motion for Summary Judgment by the Defendant, Thomson Consumer Electronics, Inc., is hereby **GRANTED.** The Court shall enter a separate judgment herewith in favor of the Defendant.

IT IS SO ORDERED.

### *JUDGMENT*

Judgment is hereby entered for the Defendant against the Plaintiff in the above-styled adversary proceeding in accordance with the Order of the Court entered the 24 day of June, 1994.